NELLIE M. PARKS *et al.* Appellees, *vs.* MARY F. HOOPER, Appellant.

*Opinion filed February 17, 1925—Rehearing denied April 8, 1925.*

1. DEEDS—*effect where a confidential relation exists between grantor and grantee.* The law looks with disfavor upon transactions between persons standing in a confidential relation and casts the burden of proving the fairness of the transactions upon the dominating person who is benefited thereby; and this rule applies where the dominating party is grantee in a deed from the other.

2. PRACTICE—*when a defendant cannot complain of refusal to permit cross-examination of witness.* A defendant who fails to call as her own witness a witness for the complainant, after the court has sustained an objection to a question asked of such witness on cross-examination on a subject concerning which he had not testified on direct examination, cannot complain of the ruling of the court in sustaining the objection.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

ALWIN W. EHRHARDT, and JOHN T. MURRAY, (DWIGHT M. KINDER, of counsel,) for appellant.

A. F. W. SIEBEL, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Appellees, Nellie M. Parks, Lloyd Kell and Edward Kell, only heirs of Nancy E. Wright, deceased, filed their bill in the circuit court of Cook county against appellant, Mary F. Hooper, to set aside two deeds made by Mrs. Wright in her lifetime to appellant to two parcels of real estate situated in Chicago and for an accounting as to rents, and as to certain bank accounts, bonds and other property belonging to Mrs. Wright, and for the appointment of a receiver. The bill charged that there was a confidential relationship existing between appellant and Mrs. Wright, and that the latter was also of unsound mind, and that appellant obtained the real estate and the other property by means of fraud and undue influence and without consideration. Appellant answered the bill, denying all of the material allegations. Upon a hearing the cause was referred to a master in chancery to take and report the evidence with his conclusions as to the law and as to the facts. The master reported that the deeds made by Mrs. Wright to appellant were obtained by means of fraud, undue influence and false representations, and that Mrs. Wright was mentally unsound at the time the deeds were made, and that appellant obtained her personal property by the same means. He also found that while appellant had received considerable of the personal property of Mrs. Wright in the same manner, she had expended money for her and had rendered her such care and assistance that he considered it equitable that appellant be only required to account for the rents and profits of the real estate. He recommended that the deeds be declared null and void and be set aside as clouds on the title of appellees. Objections to the master's report were overruled and allowed to stand as exceptions before the court. The court approved the report of the master, entered a decree in accordance with his recommendations,

and appointed a receiver to collect the rents and profits of the real estate. Appellant has prosecuted this appeal.

In 1919 the deceased, Nancy E. Wright, and her son, Charlie Wright, owned the real estate involved in this suit in joint tenancy. The property consisted of premises at 4130 West Harrison street, improved with a two-flat building of the value of $7500, and premises at 4407 Gladys avenue, improved with a house of the value of $5000. Mrs. Wright and her son lived on the first floor of the Harrison street property, and Maud and John White lived on the second floor as tenants. Mrs. Wright and her son also had a joint bank account. Charlie Wright became seriously ill and died December 31, 1919. There was a distant relationship existing between Mrs. Wright and appellant, and after the death of Charlie appellant came from her home in Gary, Indiana, to Mrs. Wright's home in Chicago. While appellant was at the home of Mrs. Wright she went to the office of a real estate firm and represented to that firm that she was buying the property of Mrs. Wright and desired that a deed to her be prepared for the purpose of conveying the real estate on Harrison street and Gladys avenue. The work of preparing the deed was turned over to Herbert T. Younger, a clerk in the firm's office. After the deed had been prepared, Younger on February 20, 1920, went to the home of Mrs. Wright with the deed. When he arrived there he found appellant and Mrs. Wright alone. Maud White was called down to the apartment of Mrs. Wright. In the presence of the three women Younger read the deed to Mrs. Wright and thereafter took her acknowledgment to it. After the deed had been executed by Mrs. Wright appellant handed to Younger a check for $6000 drawn on the Garfield Park State Savings Bank, payable to the order of Mrs. Wright. Appellant did not at that time have $6000 in that bank but only had a balance of about $660, which had been transferred to her by Mrs. Wright previous thereto, which sum was the remainder of the joint bank ac-

count of herself and her deceased son. Younger called to the attention of Mrs. Wright the fact that the check was not certified, and after some conversation, in which appellant admitted that she did not have a balance large enough to cover the check, she stated she would have to get some bonds and money from Gary to take care of the check. Younger then delivered the deed and check to Mrs. Wright, with the direction that she hold the deed until the check was certified. Mrs. Wright then placed the deed and the check in a table drawer. After the execution of the deed appellant began collecting the rents from the real estate and has continued to collect the same and manage the property since that date. In the latter part of February, 1920, Mrs. Wright was taken by appellant to the latter's home in Gary, where she remained until her death, May 31, 1920, at the age of seventy-eight years. The $6000 check was never paid, and the testimony in the record is to the effect that while Mrs. Wright was at the home of appellant she tore it up and remarked, "Now, this will make no one any trouble." On the trial of the cause it was shown that a second deed to appellant of the Gladys avenue property was made April 8, 1920, by Mrs. Wright.

The contention of appellees that on February 20, 1920, and prior thereto and thereafter until her death, Nancy E. Wright was of feeble mind and mentally incapable of transacting her business affairs, that appellant occupied a confidential relation towards her, and that by reason of such confidential relationship and by means of fraud and undue influence she induced and procured Mrs. Wright to execute the deeds without consideration, is amply sustained by the evidence in the record. All of the witnesses for appellees had been acquainted with Mrs. Wright for over five years. They had seen her often and noticed her mind weaken with her increased age, physical decline, and grief and sorrow caused by the death of her husband and son. After the death of her son her mental incapacity became

316—11

very noticeable. She asked the witness Maud White to telephone her husband on several occasions, although he had been dead for several years. She stated that her husband was at the hospital with her son, and that her son was getting better and that her husband would soon bring him home. This also occurred after the death of her son. She mumbled to herself constantly and rambled in her conversations. On one occasion she gave a newsboy a ten-dollar bill in payment of a newspaper bill of less than a dollar. She turned the gas on but failed to light the burner and held her hands over it and explained that she was warming her hands. She did not know where she had been or what she had done when she was taken by appellant to the bank and her bank account transferred to appellant and her safety deposit box opened and the contents delivered to appellant. She said to the witness Maud White, upon her return from the trip to the bank, that she had been out riding and looking into the store windows. Four witnesses testified that appellant said to them after the death of Charlie Wright, and immediately prior to the time of the execution of the deeds to her, that Mrs. Wright did not know what she was doing and was mentally incapable of looking after herself or her property. Appellant said to the notary public at the time of the execution of the first deed to her, that there was no use for him to read the deed to Mrs. Wright as she did not know what he was reading. The facts corroborate this statement of appellant, as it is shown by the evidence that while Younger was reading the deed to her she was looking out of the window and paying no attention to what he was reading. Appellant also said to Maud White after she returned from the bank, at which time all the bank account and other personal property in the bank was turned over to her, that Mrs. Wright "was as crazy as a bed-bug." These statements on the part of appellant are not denied by her or contradicted by any testimony. All of the witnesses for appellees who testified on the subject gave it as their

opinion that Mrs. Wright was of unsound mind and did not know what property she had or that she was disposing of it, after testifying to sufficient facts and conversations with her to qualify them as witnesses. Appellant met Maud White on the street on the day she went to the office of the real estate firm to have the first deed prepared and told her what she was going to do. Maud White remarked that Mrs. Wright would not sign the deed. Appellant replied that she would, and that she would go home and starve her until she did do so. This testimony of Maud White is uncontradicted.

Appellee Nellie Parks learned through strangers that her aunt had been taken to Gary by appellant and went to Gary to see her aunt. After an unsuccessful attempt she returned to Chicago, and on the next day again went to Gary with her lawyer and his stenographer and saw and talked with Mrs. Wright in the presence of the appellant. The stenographer made shorthand notes of the conversation. Mrs. Wright was asked in the presence of appellant if she had signed any papers or deeds concerning her property, and she replied that she had not and that she had not given her property to appellant. This evidence is very important because Mrs. Wright appeared to be very much attached to appellant,—so much so that she could not be induced to leave her. It is conclusive evidence to our minds that Mrs. Wright did not realize that she was transferring her property when she did transfer it. It is at least conclusive that if she did know at the time that she was transferring it, she did not have mind and memory enough to recall those transactions at the time of this conversation, which was only a very short time after the deeds were made. Appellant said to Miss Parks at the time of this conversation that she would transfer the property back if she were paid for her care of Mrs. Wright.

Appellant produced several witnesses who testified that Mrs. Wright was in their opinion of sound mind and capable

of transacting ordinary business at and after the time the deeds to appellant were executed. These witnesses had not been acquainted with Mrs. Wright before she was taken to Gary by appellant, with the exception of appellant's daughter and son-in-law. These witnesses had no conversation with Mrs. Wright respecting her property or business transactions. Some of these witnesses had seen Mrs. Wright on only one occasion and had talked to her for a very short time. Their testimony was to the effect that she was cared for and treated kindly by appellant. All the witnesses who testified on that subject concur in the statement that appellant was very kind to and took exceptionally good care of Mrs. Wright. These latter facts only add weight to the conclusion that appellant was able to, and did, take advantage of Mrs. Wright's very much weakened mental and physical condition in the transactions by which she obtained her property.

The contention of the appellant that Mrs. Wright was capable of transacting her business and of knowing the nature of the transactions whereby she transferred her property to appellant is not borne out by the evidence in the record or by appellant's declarations as to her mental condition which have already been enumerated. As already related, appellant after the death of Charlie Wright took charge of the joint bank account of Mrs. Wright and her son. She opened the safety deposit box and took the contents therefrom. She collected the rents from the property and the life insurance of Charlie Wright. She sold the furniture from the flat of Mrs. Wright and kept the money in her own name. She transacted all of the business of Mrs. Wright and commingled Mrs. Wright's money with her own and kept no account of it and paid whatever bills Mrs. Wright owed out of this combined fund. A confidential relation between appellant and Mrs. Wright was thus clearly proved, and the evidence also very clearly shows that appellant well understood and appreciated the fact that

Mrs. Wright was not able, mentally, to protect herself in any business transaction. All transactions between parties standing in such a confidential relation as existed between appellant and Mrs. Wright are looked upon with disfavor by the law, and the law casts the burden of proving the legitimacy of every transaction between them upon the stronger-minded and dominating one who is benefited by such transactions.

Appellant contends that the court erred in not allowing her to cross-examine the notary public, Younger, as to the mental condition of Mrs. Wright at the time he took the acknowledgment of the first deed. The notary was not examined in his direct examination by appellees as to the soundness or unsoundness of Mrs. Wright mentally, and such examination by appellant was not proper cross-examination. Appellant had the right, if she desired to do so, to make Younger her own witness, but she did not avail herself of that privilege. She therefore has no right to complain of the court's ruling in this particular.

The record fully sustains the allegations of the bill and the report of the master and the decree of the court. The record shows that appellant expended money for the care of Mrs. Wright and that she gave her considerable personal attention and care for which she deserved remuneration. The master has found that the services rendered to Mrs. Wright in the way of collecting together her property and paying her debts and caring for her are equal in value to the amount of money remaining in appellant's hands which was obtained from Mrs. Wright, and that the accounting in this case should only be had from the rents and profits of the real estate. As there is no cross-error assigned, and as this appears to be an equitable adjustment between the parties concerned, the decree of the court will not be disturbed.

The decree of the circuit court is affirmed.

*Decree affirmed.*