(No. 15837.—Affirmed in part and reversed in part.)
Patrick Danaher *et al.* Plaintiffs.in Error, *vs.* Henry M. Phillips *et al.* Defendants in Error.

*Opinion filed October 28, 1925.*

1. Process—*summons must be returnable on a certain date.* A summons must be made returnable on a day stated, and it does not give the court jurisdiction of the person of a party to serve him with a writ commanding him to appear at a term mentioned without stating the day of the term he is to appear.

2. Drainage—*when notice of hearing is not sufficient to give jurisdiction of person.* Notice of the hearing of objections to the organization of a drainage district under the Levee act is not sufficient to give the court jurisdiction of the person, where it is not stated in the notice what day the hearing will be had or what day the petitioners will appear in court and ask to have a day set for the hearing, the notice reciting merely the term of court at which the hearing would be asked.

3. Same—*when petition for organization of district is sufficient.* The Levee act requires that the petition for the organization of a drainage district be so drawn that the acreage of the district and the signers of the petition can, upon investigation, be ascertained, and where the necessary information is obtainable from the petition and a list of land owners attached to the petition, together with affidavits submitted, the statute is complied with, and the petition need not show a description of the lands owned by each signer.

4. Same—*when clerk's certificate as to mailing notices is sufficient.* The clerk's certificate reciting that he mailed the notices of the hearing for the organization of a levee drainage district "within three days after the first publication of the notice," is sufficient although in reciting the date of mailing the notices it re-

cites, through a clerical error, the month in which the certificate
was dated instead of the month in which publication was made.

5. SAME—*plat need not be recorded prior to order for organiza-
tion of district.* In the organization of a levee drainage district a
plat of the district should be recorded as directed in the Levee act,
but the court is not required to await the recording of the plat be-
fore making the order organizing the district.

WRIT OF ERROR to the County Court of LaSalle county;
the Hon. HARRY RECK, Judge, presiding.

BUTTERS & BUTTERS, and ROGER H. CLARK, for plain-
tiffs in error.

GEORGE F. BELL, and JONES, ESSINGTON & HEFLIN, for
defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was a proceeding in the county court of LaSalle
county for the organization of Hope Township Drainage
District, under the Levee Drainage act. The petition pray-
ing for the creation of a drainage district described therein
was filed February 11, 1920. A hearing was had thereon,
commissioners were appointed by the court July 12, 1920,
and after a hearing upon the report of the commissioners,
on December 23, 1921, the county court entered an order
establishing the district. Certain objectors sued out this
writ of error to review the proceedings in the county court,
but by stipulation of the parties the time for filing briefs
of defendants in error was extended from time to time till
May, 1925.

The district as planned is practically rectangular in
shape, a little over four miles long from east to west and
about one and one-half miles in width. It contains approxi-
mately 4700 acres of land, and the village of Lostant, with
a population of about 500 persons, is located in and near
the northeast corner of the district. A natural water chan-

nel or ditch known as Little Sandy creek furnishes the only drainage facilities at the present time. It runs through the village and thence in a westerly and southwesterly direction through four sections of the land in the district. The petition and the proof offered disclose that this open ditch is partially obstructed with vegetation and debris and overflows at times in the year, causing damage to large portions of adjoining lands; that three-fourths of the basements in the village of Lostant were full of water in the spring of the year; that water stands in parts of the ditch, becomes stagnant, and is a menace to the health of the community. The drainage plan proposed by the commissioners and their engineers, as shown by the record, is the installation of tile drains, the main thirty-six-inch tile following the general course of the open ditch, which is to be completely filled up. Other lateral tile drains are to be constructed of such size and at such places determined upon so as to adequately drain all of the lands. The probable cost was estimated at approximately $148,000, and the annual maintenance, barring unusual occurrences, estimated at $100. The commissioners filed their report on August 15, 1921, after several continuances made by the court from time to time. The report shows that no lands within the district would be damaged on account of the construction of the tile drains and that the benefits would be double the cost. The commissioners reported further that no lands outside the district would be damaged but that several hundred acres so situated would be benefited, and they added to the district as originally planned 320 acres, namely, the south half of section 13 of township 31, which addition they stated would still make the signers of the petition constitute more than one-third of the adult land owners in the proposed district, who represent at least the major portion in area of the lands therein. The court found the necessary statutory provisions relative to establishing a drainage district had been complied with and that the drainage work proposed would be useful

for agricultural and sanitary purposes, and the district was duly established by order of the court.

There are numerous assignments of error in the record. Certain plaintiffs in error appeared specially, challenging the court's jurisdiction, and others appeared generally and filed objections. The contentions of the several objectors are classified by counsel under six different subdivisions, some of which are re-subdivided.

It is contended by those challenging the jurisdiction, that the court did not acquire jurisdiction of the parties. The petition was filed February 11, 1920, and notice given, by publication and mailing, of the date the petition was filed, "and that a hearing of said petition would be asked for at the March term of said county court." On April 30, one of the days of the March term, the case was continued to the May term and finally set down for hearing June 23. As we understand the record, plaintiffs in error Danaher, Lungreen and Barton had previously entered a limited appearance for the purpose of contesting the court's jurisdiction of them, one of the grounds being that the notice of filing the petition was insufficient. A hearing was had, and the court entered an order finding it had jurisdiction and overruled the objections. Subsequently further hearings were had on general objections filed by land owners to the commissioners' report. An order was entered establishing the district. On behalf of Danaher, Lungreen and Barton the action of the court in overruling the objections to the court's jurisdiction is assigned for error.

The court did not acquire jurisdiction of the parties by the notice published and mailed. Section 3 of the Levee act requires the notice to state when and in what court the petition is filed, "and at what term of the said court the petitioners will ask a hearing." (Smith's Stat. 1923, p. 756.) The notice stated the petitioners would ask for a hearing at the March term but stated no day of said term. Thirty days did not intervene between the first publication and the first

day of the March term, so that could not have been the return day, and no particular day of the term was fixed by the notice. Whether the statute required the notice to fix the first day of the term as return day was considered in *People* v. *Munroe,* 227 Ill. 604, and it was there held return day is not required to be fixed for the first day of the term but may be fixed on any day during the term far enough in the future to permit the statutory notices to be given, but it was not held in that case that no definite day of the term should be fixed. In the *Munroe case* a definite day was fixed, March 20, which was not the first day of the term but was one of the days of the February term. That decision was followed in *Regan* v. *Upper Salt Creek Drainage District,* 311 Ill. 18. It is not stated in that opinion whether or not the notice fixed the return day on a definite day during the term. The statute is ambiguous in that it does not say whether the notice shall state the date on which the hearing shall be had or the day the petitioners will appear and ask that a date be set for the hearing. It is perhaps capable of the possible construction that the date of the hearing is not required to be stated in the notice but that the day on which the petitioners will appear in court and ask the court to set a date for the hearing must be stated in the notice. The notice is the process by which the court acquires jurisdiction of the parties interested. The return day of a summons at law or in chancery is the first day of the next term of court at which the action may be commenced. A summons must be made returnable on a day stated. It would not give the court jurisdiction of the person of a party to serve him with a writ commanding him to appear at a term mentioned without stating the day of the term he is to appear. The notice required by section 3 answers the place of a summons, and the time stated therein when the petitioners will appear in court is the "return day," or the time the "writ is made returnable." That was so stated in the *Munroe* and *Regan cases, supra.*

Whether the statute be construed to require the notice or process to state what day of the term the hearing would be had, or whether it is required to state what day of the term the petitioners would appear and ask that the date be set for the hearing, it is essential to valid service that the notice state what day the hearing will be had or what day the petitioners will appear in court and ask to have a day set for the hearing. The court erred in not sustaining the objections to jurisdiction of the persons of the three plaintiffs in error mentioned. That, however, does not affect the validity of the judgment of organization as to those who entered their appearance and filed general objections. Levee act, sec. 16; *People* v. *Shannon,* 302 Ill. 186; *Aldridge* v. *Matthews,* 257 id. 202; *Lingle* v. *Clear Creek Drainage District,* 281 id. 511.

It is contended the record and proceedings are void for want of jurisdiction because the petition does not show upon its face the necessary number of signers required by the statute. As shown by the wording of the petition, it purports to bear the signatures of one-third or more of the owners who owned a majority of the land in the district. It contained the signatures of 122 persons, and attached to and made a part of the petition was a list of all the 296 owners of land located within the district, specifying the number of acres owned by each. The affidavits of six signers of the petition were filed, which show the petition to have been signed by more than one-third of the land owners within the district, representing a majority of the area. The position of counsel for plaintiffs in error is that the petition should show the description of the lands owned by each signer. In *North Richland Drainage District* v. *Karr,* 280 Ill. 567, this court said a drainage district petition was not defective where neither the total acreage of the district nor the number of acres owned by each signer was given. The statute only requires that the petition be drawn so that the acreage of the district and the signers of the petition

318—14

can, upon investigation, be ascertained. We think the necessary information obtainable from the petition and the list of land owners which was attached thereto. In the absence of proof to the contrary, the affidavits submitted may be taken by the county court as *prima facie* evidence of the facts stated therein. (Levee act, sec. 5.)

Plaintiffs in error contend the publishing, mailing and posting of notices were not done as provided by statute. The only evidence in the record regarding the publication of notice is the certificate of the publisher, which shows the publication thereof to have been made in a regular weekly newspaper of the county during three successive weeks, on February 13, February 20 and February 27, 1920. The mailing of notices to non-residents is shown by the clerk's certificate, which states he mailed the notices on March 13, 1920, "being within three days after the first publication of the notice." Section 3 of the statute requires such mailing to be done within three days after the first publication of such notice. The first publication, as we understand the record, was on February 13, 1920, and there appears to be no refutation of the publisher's certificate as to this date. The clerk's certificate was dated March 24, states it was made in pursuance of section 3 of the Levee act, and refers to the date of mailing as being within three days of the first publication of the notice. We are of the opinion the word "March" is to be regarded as a typographical or clerical error in the certificate and should read "February," that being the month during which publications of the notice were actually made. The affidavit of posting of notices recites that the places used were the most public places in the proposed district. There was a sufficient compliance with the statute.

Plaintiffs in error say this improvement should have been under the Farm Drainage act, because no levees are contemplated in the work to be done. There is no merit in this point and we shall not discuss it.

It is further contended that the court lost jurisdiction, if it ever had acquired it, in taking additional lands into the district, after approving the commissioners' report, without any showing being made, and approving a plat showing the boundaries of the district at variance with those, fixed in the order establishing the district. Section 9 of the Levee act requires the commissioners to examine all the land proposed to be drained or protected and the lands over which the proposed work is to be constructed, and determine whether the district as proposed in the petition filed will include all the lands that may be damaged or benefited by the proposed work, and if not, to report what additional lands will be so affected. Section 12 provides that if the commissioners find the district as described in the petition contains lands which will not be benefited by the proposed work or does not contain lands which will be benefited they may extend or contract the boundaries of the proposed district accordingly, and such boundaries adopted and reported by the commissioners may be altered by the court as shall appear to be just. Section 13 provides for notice to be given to land owners of additional lands to be included within the district and makes the report of the commissioners *prima facie* evidence of the facts therein set forth. The report of the commissioners described several hundred acres of land outside the district which would be benefited, but actually included within the district only 320 acres additional, being the south half of section 13. The report itself shows no other boundary changes by the commissioners, nor does it describe or show the inclusion or exclusion of any other lands.

Counsel for all parties agree that the record in this case is imperfect and somewhat confusing. With this confession on their part we are in full accord. Some of the descriptions and boundary lines as they appear in different notices, publications and upon the plat have been somewhat difficult to harmonize. The briefs, and abstract as well,

also contain errors in that regard. The plat shown in the record gives the location of the lands in the district, but if the red line is supposed to show the boundary line of the district it does not comply exactly with the boundary as described in the original petition filed. The written report of the commissioners as it appears in the record can be read and interpreted in no other way than that the district was to be organized, in the opinion and judgment of the commissioners, in accordance with and as provided for in the original petition and adding thereto the south half of section 13. The order of the court, after the hearing upon the commissioners' report on December 23, 1921, particularly sets out and describes the additional lands included in the district by the commissioners. The order finds the necessary notice to have been given to the additional owners, (naming them,) and to all persons interested, of the filing of the original petition, confirms the report of the commissioners and declares the district duly established. The boundary lines of the district as they appear in the order do not encircle the additional lands,—namely, the south half of section 13,—and there appears a clerical or typographical error at one of the northwesterly corners, where the word "southwest" was used for "southeast." We think this only a clerical error, otherwise the boundary line would not follow that described in the petition but would go southwesterly instead of south, as stated in the description, and extend diagonally across lands instead of following section lines. We think the order in confirming the report of the commissioners capable of interpretation as establishing the boundary lines exactly as described in the original petition, with the addition thereto of and including within the district the south half of section 13.

Plaintiffs in error question the jurisdiction because no plat was recorded. A plat of the district seemingly accompanied the commissioners' report. Section 16 of the Levee act provides that if the court finds a drainage district should

be organized, the plat of the same shall be recorded and an order made according to the findings of the court, after entry of which the district is organized. The plat should be recorded as directed by the statute. However, the court is not required to await the recording of the plat before making the order organizing the district. *People* v. *Darst*, 285 Ill. 533.

It is further contended that the court denied the right of the objectors to show that the original petition was not signed by the number of owners as required by the statute. This position is based upon the court's refusal to permit counsel to interrogate three or four certain witnesses on cross-examination as to whether the petition was signed by one-third of the land owners, representing a major portion of the lands within the district. It appears that none of these witnesses were questioned on direct examination concerning the signatures upon the petition, though one or two said they were familiar with the petition. There was nothing to prevent counsel for plaintiffs in error from using these persons as their own witnesses, or other persons, had they desired to produce such evidence from them, and we think the contention made is of little consequence. *Parks* v. *Hooper*, 316 Ill. 158.

Another contention is that the lands will not be benefited,—particularly those of the objectors,—and that the plan is not a feasible one. It is conceded that the present open ditch known as Little Sandy creek is the only drainage facility for the farm lands in that vicinity and for the village of Lostant. The proof shows this creek, in its present condition, to be incapable of properly carrying off the water which reaches it, and that it is more or less filled with rubbish, willows and vegetation. The present scheme contemplates a system of large tile drains and an outlet, whereby the ditch may be filled, abandoned and reclaimed for farming and the water taken through a more direct course and moved away more rapidly than before. As to

the method contemplated, the engineers and commissioners, as well as other witnesses, are.in accord that the district as planned will be properly and adequately drained. We are unable to say that the proof in the record does not warrant the conclusion reached by the commissioners and the court that the lands will be benefited and the plan submitted is a satisfactory one to furnish adequate drainage.

It is finally contended that the court erred in striking from the files the objections of some individuals who owned lands outside the district which it was claimed drained into Little Sandy.creek. Counsel for plaintiffs in error say these persons had a right to object, and refer to section 5 of the Levee act, wherein it is recited, "all parties through or upon whose land any of the proposed work may be constructed, or whose lands may be damaged or benefited thereby, may appear and contest the necessity or utility of the proposed work or any part thereof." Counsel stated to the trial court at the time the motion was made by opposing counsel, that they had no citation of authority upon the rights of persons owning land outside the district to object to the organization, nor did counsel represent other outside land owners objecting to the jurisdiction of the court. If any of the lands outside the district are liable to be taken into the district at a later date, the owners will then have an opportunity to be heard.

The record is confusing and unsatisfactory, and to some extent the briefs are also. We have endeavored to get a correct understanding of it, and it seems certain that the district as described in the petition and added to by the commissioners contemplates satisfactory drainage for the lands thereof and minimizes a menacing health condition for that community, including the village of Lostant.

The judgment is reversed as to Danaher, Lungreen and Barton and affirmed as to all the other plaintiffs in error.

*Affirmed in part and reversed in part.*