**People of the State of Illinois, Plaintiff-Appellee, v. Willie Brown, Defendant-Appellant.**

**Gen. No. 49,937.**

First District, Second Division.

December 20, 1966.

Malcolm P. Brown, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Ronald Sandler, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction for the crime of voluntary manslaughter, after a bench trial, with sentence in the Illinois State Penitentiary from 1 to 20 years. Defendant was indicted and tried for murder and pleaded self-defense.

At the trial, Ida Jenkins, a witness for the People, testified that she was the common-law wife of the deceased, Edward Jenkins; that she had talked to Jenkins on January 18, 1964, at 3:30 p. m.; that he sounded a little intoxicated; that Jenkins, in the months preceding the incident, had not been working; and that defendant (her

son by a former marriage) and she were supplying him with his necessities.

Officer John Sullivan, a witness for the People, testified that he was assigned a call at 7516 South Ridgeland; that when he arrived at that address, he met defendant in the courtway; that defendant stated, "Get an ambulance. I cut my father"; that he went up to the second floor apartment and observed Jenkins lying on the floor in a pool of blood; and that there was a knife at Jenkins' right side and a hatchet laying at Jenkins' feet.

Officer Sullivan further testified that defendant told him that about two hours previous to the incident, he had come home and found Jenkins in the bedroom with a girl; that Jenkins left the apartment with the girl; that he called his mother and explained what had happened; that Jenkins also called his (defendant's) mother before returning to the apartment; that upon his return Jenkins called him a "stool pigeon"; that a fight ensued; and that during the fight defendant reached for an axe, which was on the dining room table, and struck Jenkins. Officer Sullivan testified that defendant did not tell him that Jenkins had a weapon. On redirect examination of Officer Sullivan, however, he testified that defendant said, "I thought he had a knife, but I did not see it."

A statement taken from defendant at the Third District Station on January 18, 1964, was introduced into evidence, whereby defendant stated that upon the return of Jenkins to the apartment, he started to attack defendant and that he did not see any knife in Jenkins' hand but thought he did have a knife. A second statement taken in the Criminal Court Building on February 5, 1964, from defendant, was introduced into evidence, whereby defendant stated that Jenkins, upon returning to the apartment, grabbed defendant, while he was lying on the bed, and chased him into the dining room, where defendant grabbed a hatchet and struck Jenkins on the head. In this statement defendant again reiterated that he did not

328

see anything in Jenkins' hand but further stated that when Jenkins fell to the floor, he turned him over and found a butcher knife on the floor.

Defendant testified in his own behalf and stated that he arrived at the apartment on January 18, 1964, at about 2:00 o'clock in the afternoon; that he could not get into the apartment because the door was locked; that he rang the bell; that Jenkins came to the door with only his shorts on; that he went into his mother's room to look for a notebook; that he noticed the closet door move; that he opened the closet door and noticed a woman standing in the closet in her slip; that he asked her to come out of the closet; that she put her clothes on before coming out of the closet; that he asked Jenkins to take the woman away; that they both left together; that Jenkins came back about 15 or 20 minutes later; that Jenkins stayed for about five minutes and left; that it was his opinion that Jenkins was under the influence of intoxicating liquor; that Ida Jenkins, his mother, called and he told her what occurred in the apartment; that Jenkins came back about a half-hour later and said, "You told her, didn't you?"; that Jenkins left the apartment; that defendant was asleep in the front room, when Jenkins returned at about 4:30 p. m.; that Jenkins grabbed him from behind; that he broke away from Jenkins and stated, "Stay away from me"; that Jenkins kept charging him; that he saw the hatchet lying on the table; that Jenkins kept coming at him; that he swung the hatchet and struck Jenkins; that he was booked for aggravated battery; and that 17 or 18 days later Jenkins died. Defendant also testified that when he turned Jenkins over, he discovered a butcher knife in his hand. In response to a question as to whether or not he knew Jenkins had a knife when he was coming at him, defendant testified that "I knew he had something, but . . . I never saw the knife."

On cross-examination, defendant stated that he loved his mother and respected her and that Jenkins had told him that he did not love his mother. In response to a question of whether that made him mad, defendant stated, "No sir, it actually did not." After hearing the evidence, the court found defendant guilty of voluntary manslaughter. Defense counsel requested probation, which was denied and the court imposed a sentence of from 1 to 20 years in the penitentiary.

It is defendant's theory of the case (1) that he hit the deceased in self-defense and that he was improperly convicted of voluntary manslaughter in that there was no evidence of sudden or intense passion in which to convict a person under section 9–2(a), chap 38, Ill Rev Stats (1963) or proof by the State, beyond a reasonable doubt, that defendant did not believe the circumstances justified the killing and/or defendant's belief was reasonable, as required by section 9–2(b), chap 38, Ill Rev Stats (1963) and (2) that a statement and finding made by the trial court constituted prejudicial error. We agree with defendant. We find there was insufficient evidence to convict defendant of the crime of voluntary manslaughter. There was uncontroverted testimony by defendant that the derogatory remarks about his mother did not make him angry. Therefore, there was no evidence presented by the People that defendant was acting under sudden or intense passion, as required by section 9–2(a), chap 38, Ill Rev Stats (1963).

Despite the statement by the trial court, that defendant used excessive force in defending himself, that the use of the weapon was unwarranted and that the alleged attack by Jenkins was not of such a nature to warrant the acts of the defendant against Jenkins, we feel the People failed to prove, beyond a reasonable doubt, that defendant did not act in self-defense. There was uncontroverted testimony that Jenkins was intoxicated. There is further uncontroverted testimony that Jenkins

had a bad reputation and had struck defendant's mother on numerous occasions. Defendant, in his statement to the police, stated that he thought Jenkins had a knife. Furthermore, he testified that when Jenkins was coming at him "he knew he had something . . . but he never saw the knife." There was evidence that Jenkins was shouting at defendant from a distance of a few feet; that Jenkins was angry at defendant for telling his mother about Jenkins' escapade with another woman; and that defendant felt he was unable to get out of the apartment. We feel that there was sufficient evidence in the record for defendant to believe that deadly force was necessary to prevent his death or to protect himself from great bodily harm and that this belief was reasonable.

We do not have to consider defendant's second contention because of the result reached above.

The judgment is reversed.

Judgment reversed.

BRYANT, P. J. and BURKE, J., concur.