**People of the State of Illinois, Plaintiff-Appellee, v. Willie Young, Defendant-Appellant.**

Gen. No. 51,199.

First District, First Division.

October 21, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Howard Levine, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Defendant, Willie Young, was indicted and tried for the murder of Beatrice Harding. After a bench trial in the Circuit Court of Cook County, Criminal Division, the defendant was found guilty of voluntary manslaughter and sentenced to a minimum of five and not more than ten years in the Illinois State Penitentiary. The defendant contends, on appeal, that upon the testimony offered at the trial, he should have been found not guilty of any crime in that the evidence showed he acted in self-defense, and also, that his rights were violated when the trial judge restricted his counsel's cross-examination of a witness.

The first witness to testify was George Watkins, 80 years old, common-law husband of the deceased, Beatrice Harding. According to Mr. Watkins, he and Beatrice Harding were in their apartment at 3144 South Indiana Avenue, Chicago, Illinois, on February 25, 1965, at approximately 4:30 in the afternoon. At that time, Willie Young, the defendant, arrived at the apartment and offered to buy them a drink. The defendant handed a dollar bill to the witness and told him to go and purchase some liquor. As the witness started for the door, he met another resident of the building who apparently had overheard the discussion and who volunteered to go and purchase the liquor. The defendant objected to this person going for the liquor, whereupon Beatrice Harding said she would go. Mr. Watkins handed the dollar bill to her

and she reached to get her coat. At this point, she was approximately two feet away from the witness, standing directly between the witness and the defendant, with her back towards the witness and in a direct face-to-face confrontation with the defendant. Mr. Watkins continued to testify that her hands were at her side and that nothing was in her hands except for her right hand which was clutching the dollar bill. The defendant was standing in the doorway, approximately ten feet from her. Watkins could observe the defendant, but could not see the defendant's hands. (Watkins stated on direct examination that he was standing up near the bed when Beatrice Harding was between him and the defendant, but on cross-examination he stated he was sitting down.) The witness continued to relate that he heard the defendant say "Don't come no further." Beatrice Harding moved forward, a shot was fired, and she fell to the floor. The defendant then turned around and walked out of the apartment. Watkins stated that he could observe the defendant but not the defendant's hands; that he did not see the defendant take a gun from his person, but did see the firing of a gun; and could not remember whether there was one or two gunshots. He did not see any knife in the deceased's hand or anywhere near her, nor was any knife found at the scene of the event.

Testifying on his own behalf, the defendant stated that he went to the residence of Beatrice Harding to see George Watkins. While conversing with Mr. Watkins, he gave Watkins a dollar bill to obtain some liquor. Beatrice Harding then walked towards the defendant and inquired whether or not he was going to buy Mr. Watkins and her some wine. Defendant replied he was not, whereupon Beatrice Harding insisted that he do so and stated "Son of a bitch you don't get the wine I'm going to kill you." As defendant backed away from her, she advanced towards him with a knife which defendant claims she took from her apron. Defendant managed to wrest the

knife from her. She thereupon obtained another knife from atop her dresser stand and continued her advance towards him. Defendant told her not to come at him with the second knife, but she nevertheless advanced, threatening to kill him. Defendant thereupon drew his gun and shot her. He did not recall how many times he pulled the trigger. Defendant immediately left the apartment and went to a friend's home. He did not recollect if he reloaded his gun or whether his friend did it for him. On cross-examination, the defendant admitted that after he gave Watkins the dollar bill, Beatrice Harding volunteered to go for the liquor, and Watkins gave the dollar bill to her.

Officer Charles Lawrence testified that he was directed to the 3100 block on Indiana Avenue to pick up the body and transport it to the hospital or morgue. When he arrived he observed the deceased, Beatrice Harding, lying on the floor in a pool of blood. There was a one dollar bill crumpled up in her right hand which he took and placed on the dresser.

Henry Spangelo, a Chicago police detective, testified that after receiving a radio message that the defendant was wanted in connection with a shooting, he and his partner proceeded to the vicinity of the crime. At about 7:00 p. m. that same evening they observed the defendant, who submitted to arrest without any resistance. The officers searched the defendant and discovered a fully loaded .38 caliber revolver in his waistband and a paring knife in his jacket pocket. The defendant told Detective Spangelo that he had shot the deceased in self-defense.

The parties stipulated that if Dr. Tapia, a coroner's physician, were called to testify, his testimony would be that Beatrice Harding, 51 years old, was killed by a bullet wound of the brain, and that a blood analysis of the deceased indicated she had consumed five or six drinks on the day in question.

Two witnesses testified for the defense concerning the reputation of the deceased in the community. Jack Foster stated he knew the deceased for several weeks and had heard that "she would kill with a knife." John Dye stated he knew the deceased four or five years and heard that she was a rough, mean woman and that she would cut people with a knife.

██ ██ Defendant's first contention is that evidence adduced at the trial shows that the defendant reasonably believed he was in fear for his life, and that he shot Beatrice Harding in self-defense. There is no question that on or about 4:30 p. m., on February 25, 1965, a woman went to her death; nor is there any question that her death was caused by a bullet discharged from a gun held by the defendant. The evidence presented by the State consisted primarily of the testimony of Mr. George Watkins, an eyewitness to the homicide, and the testimony of officer Spangelo, who apprehended the defendant and to whom the defendant admitted he shot Beatrice Harding in self-defense. We cannot agree with the defendant's contention. Although Mr. Watkins' testimony was contradicted by the defendant, and several discrepancies existed between the witnesses' version of what occurred at the scene and the defendant's version, there was no challenge to George Watkins' competency to testify. In a bench trial it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony, and the trial court's judgment as to the credibility of the witness will not be disturbed simply because there is a conflict in the testimony. People v. Clark, 30 Ill 2d 216, 195 NE2d 631 (1964), People v. Johnson, 47 Ill App2d 441, 198 NE2d 173 (1964). In People v. Bradley, 70 Ill App2d 281, 217 NE2d 434 (1966), we stated:

". . . unless it can be said that the court's judgment is found to rest on doubtful, improbable or

unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable."

■ No explanation of the whereabouts of the second knife Beatrice Harding allegedly possessed was offered at the trial, and the only knife offered in evidence was the paring knife taken from the defendant at the time of his arrest. George Watkins stated he had never seen the paring knife before until the defendant held it in his hand prior to shooting the deceased. Mr. Watkins witnessed the entire incident from beginning to end, and as previously stated, his credibility and the weight to be accorded his testimony were for the trial judge to determine. The testimony of one witness alone, when it is positive and the witness credible, is sufficient to sustain a conviction even though the testimony is contradicted by the accused. People v. Napper, 78 Ill App2d 451, 223 NE2d 194 (1967); People v. Miller, 30 Ill2d 110, 195 NE2d 694 (1964).

Chapter 38, section 9–2(b), of the Illinois Revised Statutes, 1965, provides:

"§ 9–2(b). A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

Section 7–1 provides:

"§ 7–1. A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to

defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

The trial judge resolved the facts against the defendant, and upon our inspection of the record, these facts do not reveal that the defendant, Willie Young, acted in self-defense when he killed Beatrice Harding. Under all the circumstances, we are of the opinion that there existed no reasonable ground for the defendant to believe it was necessary for him to shoot the deceased to prevent imminent death or great bodily harm to himself. Defendant argues that People v. Brown, 78 Ill App 2d 327, 223 NE2d 311 (1967), is persuasive authority for the proposition that his belief that deadly force was necessary to protect himself from death or great bodily harm, was a reasonable belief. However, the Brown case is readily distinguishable from the instant case. In Brown, there was no independent eyewitness other than the defendant who testified to the facts and circumstances surrounding the homicide. The defendant did not have an exit to escape his pursuer, and also, the defendant stated that while being pursued by the victim, he thought the victim had a knife, but did not actually see it. A knife was found later at the scene by the investigating police officer. Neither People v. Honey, 69 Ill App2d 429, 217 NE2d 371 (1966), or People v. McClain, 410 Ill 280, 102 NE2d 134 (1952), also cited by the defendant, lend support to defendant's contention.

Defendant next maintains his rights were violated when the trial court restricted his defense counsel's cross-examination of a State witness. During the trial of the case, defendant's counsel propounded certain questions to officer Charles Lawrence on cross-examination,

concerning why the officer would not talk to him prior to trial. This was objected to by the prosecutor and sustained by the trial judge. Defendant contends that the trial court erred when it sustained these objections, as defense counsel had a right to request the reason why the police officer would not speak to him prior to the trial, and that the trial court restricted defense counsel from ascertaining if the police officer had been requested not to talk to defense counsel. The testimony that occurred is set forth below:

"Q. Did I ever have any conversation with you about this case?

"A. No.

"Q. Did I ever talk to you here in this courtroom?

"A. Yes.

"Q. Did you refuse to talk to me?

"A. Not in this courtroom, no.

"Q. Was it outside the courtroom?

"A. I stated to you at the time that if you wanted to ask me questions concerning the case that could be done on the bench for a matter of record.

"Q. Well, you were not willing to discuss this case with me before?

"Mr. Buck: Object. This is our witness.

"The Court: He may answer.

"A. Pardon me?

"Mr. Cohn: Q. You were not willing to discuss this case with me before you took the stand today, is that correct?

"A. That's correct.

"Q. Were you told that you shouldn't discuss this case with anyone by a superior officer or any other police officer?

"Mr. Buck: Object, immaterial.

"The Court: Sustained.

"Mr. Cohn: Q. Were you ever told this by the State's Attorney?

"Mr. Buck: Object, immaterial.

"The Court: Same ruling, sustained.

"Mr. Cohn: Q. Is this your own decision not to talk to me?

"Mr. Buck: Object, immaterial.

"The Court: Sustained."

At the outset, we note that officer Lawrence played a small role in the case. His assignment was essentially to pick up the body of Beatrice Harding and transport it to the hospital or morgue. He took no part in the investigation, had no interviews with neighbors or witnesses, and the knowledge he had of the case he related at the trial when called as a State's witness. The defendant relies heavily upon Gregory v. United States, 369 F2d 185 (DC Cir 1966), and urges that the instant case falls within its holding. In the Gregory case, defense counsel asked for the assistance of the trial judge concerning his difficulty in interviewing witnesses to the events on trial. The prosecutor conceded to the trial judge that he advised eyewitnesses to the crimes not to speak to anyone about the case unless he, the prosecutor, was present. The prosecutor further advised the trial judge that the defense counsel's request for assistance to interview these witnesses had already been denied by a motions judge. The trial judge then stated that this disposed of the matter. On appeal, the court held the prosecutor's advice to the eyewitnesses precluded the means by which the defense could obtain evidence and also denied the defendant a fair trial.

We observe a multitude of differences between the Gregory case and the case at bar. In the instant case, officer Lawrence was not an eyewitness to the crime, he was merely sent to pick up the body at the scene; the defendant's counsel did not ask the trial judge for assistance in interviewing officer Lawrence prior to the

trial—instead, defense counsel waited until the trial, until cross-examination, to ask his questions; defense counsel did not allege the State's Attorney precluded him from speaking to officer Lawrence, or had induced Lawrence not to speak to him. The record shows no evidence whatsoever that Lawrence was told not to speak to defense counsel, or that this was suggested to him; the State did not attempt to frustrate defense counsel's preparation of the case or prevent defense counsel from interviewing Lawrence; defense counsel did not allege the means by which he could obtain evidence was suppressed, or that any evidence was suppressed; and that Lawrence himself made the decision that he was willing to talk to defense counsel in the courtroom concerning the case, but not outside the courtroom.

■ While the trial court has discretion to restrict the scope of cross-examination, People v. Cook, 78 Ill App2d 219, 222 NE2d 13 (1967), People v. McCain, 29 Ill2d 132, 193 NE2d 784 (1963), a case will be reversed only if such discretion has been clearly abused and such abuse materially affected the result of the trial. People v. Gilbert, 12 Ill2d 410, 147 NE 44 (1958); People v. Jones, 343 Ill 291, 175 NE 414 (1931). We therefore find that the trial judge's sustaining of the objections to defense counsel's questioning of officer Lawrence was a legitimate exercise of judicial discretion, as the line of inquiry sought by defense counsel was immaterial as to this witness. Furthermore, we find no substantial or prejudicial error was committed by the trial judge which infringed upon the rights of the defendant in this respect. Brady v. Maryland, 373 US 83, 10 L Ed2d 215, 83 S Ct 1194 (1963), is not applicable to the present case. Accordingly, the decision of the Circuit Court of Cook County, Criminal Division, is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.